DON BARNES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 103840. Promulgated October 3, 1941.

*Don Barnes* pro se.
*Felix Atwood, Esq.,* for the respondent.

ARNOLD: This case involves an income tax deficiency for the calendar year 1937 in the amount of $182.47. The case was submitted on a stipulation of facts which we adopt as our findings. The question for determination is whether a $1,500 loss was sustained in 1937, and, if so, whether it was a capital or an ordinary loss.

The petitioner is engaged in the practice of law in Cedar Rapids, Iowa, and has been since 1901. He filed his 1937 income tax return with the collector of internal revenue for the collection district of Iowa.

On February 28, 1920, Park Chamberlain, William Chamberlain, and petitioner jointly purchased a farm in Jones County, Iowa, known as the French farm for a cash consideration of $44,054.40, title to which was taken in the name of Park Chamberlain. During that year they purchased other farms, known as the Orr, Brady, Sieveka, and McNamara farms. These farms were purchased for the purpose of resale at a profit and it was understood that each had an equal interest therein, regardless of the name in which the title was held. On May 13, 1925, the above named parties, their wives joining, executed a mortgage on the French farm to secure the payment of a note of that date in the sum of $12,000, payable to Matilda Dennison, upon which they were jointly and severally liable. This mortgage was subordinate to a mortgage of $16,500 held by the Equitable Life Insurance Co. of Des Moines, Iowa, on which the parties were likewise jointly and severally liable.

On June 23, 1930, Park Chamberlain released all his interest in the farms to petitioner and William Chamberlain by quitclaim deed, for a recited consideration of $1 which was understood not to be paid and was never paid. The deed was made to petitioner as grantee. Park Chamberlain was not thereby released from his obligation on the mortgages to Equitable Life Insurance Co. and Matilda Dennison.

In 1934, by agreement between petitioner and William Chamberlain, William Chamberlain was to take title and separate ownership of the French farm and pay the $16,500 mortgage to the Equitable Life Insurance Co. and one-half of the second mortgage to Matilda Dennison, and relieve petitioner of his obligation to that extent, and petitioner was to relieve William Chamberlain of any liability on the other half of the Dennison mortgage, then outstanding in the amount of $12,000. It was further understood that a division would be made of all the farms owned jointly by petitioner and William Chamberlain if a sale could not be made. In 1934 petitioner relinquished all his right, title, and interest to the French farm to William Chamberlain. To carry out his part of the agreement as to the Matilda Dennison mortgage,

petitioner executed to Matilda Dennison an unsecured note in the sum of $3,000 and Park Chamberlain gave her an unsecured note in the sum of $3,000 for that portion of the mortgage to her which was not assumed by William Chamberlain. She canceled and released her mortgage against the French farm in 1934.

Conveyances were made in 1936 when petitioner, by quitclaim deed for a recited consideration of "One Dollar and other valuable considerations", conveyed all his right, title, and interest in and to the French farm and the Orr farm to William Chamberlain's grantee, and William Chamberlain at the same time by quitclaim deed conveyed all his right, title, and interest in the Brady and Sieveka farms to petitioner. The consideration of $1 recited in the deeds was not intended to be paid and never was paid. Title to the McNamara farm remained in joint ownership of petitioner and William Chamberlain.

In 1934, and at all times since, the value of the French farm did not exceed the sum of $16,500, and the fair market value of the five farms above mentioned was not in excess of the first mortgages outstanding thereon.

Petitioner paid $500 on his unsecured note to Matilda Dennison in 1934, $1,000 in 1936, and $1,500 in 1937.

In his return for 1937 petitioner claimed a deduction of the $1,500 paid on his note to Matilda Dennison in that year. The Commissioner disallowed the deduction, stating, under "Explanation of Adjustments" in the deficiency notice:

It is held that the payment in 1937 of $1,500.00 on your personal note given in 1934 for your share of the second mortgage on the French farm, owned jointly at that time by yourself and William Chamberlain and on which you were liable, did not give rise to a deductible loss.

The points relied on by petitioner in his brief are as follows: Respondent erred (1) in holding that the $1,500 deducted in 1937 was a capital loss and only 30 percent thereof was deductible, and (2) in failing to allow the loss as an ordinary loss under the provisions of section 23 (e), Revenue Act of 1936. Petitioner's contentions are premised on the assumption that he sustained a loss. This is precisely the question which we must determine before we can classify the loss.

The stipulated facts show that petitioner and the Chamberlains purchased certain farms in 1920 for the purpose of resale at a profit. In 1934 petitioner and William Chamberlain divided a portion of the jointly owned property between them so that the former would have two farms and the latter two farms. To equalize the division petitioner gave his unsecured personal note to Matilda Dennison, which was used in securing the release of the French farm from a second mortgage. It is the payment on this note which petitioner says constituted a loss.

We think it is immaterial that the farms were worth less in 1934 than the first mortgages thereon. The normal inference is that petitioner expected to benefit or he would not have entered into the arrangements he did with his coowner. Until petitioner disposes of the farms there can be no identifiable event which would result in gain or loss. See *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398; *Lucas* v. *American Code Co.*, 280 U. S. 445. If it be said that the $12,000 borrowed from Matilda Dennison was not used in the purchase of the farms, and the record does not show that it was so used, then obviously the repayment of money borrowed results in no recognizable loss to the taxpayer. *United States* v. *Little War Creek Coal Co.*, 104 Fed. (2d) 483.

The cases cited by petitioner involve capital or ordinary losses in closed transactions where the taxpayer had disposed of or abandoned his property rights and are not in point. This petitioner made no final disposition of the property received by him. He changed his undivided interest in four farms to the sole ownership of two farms and gave his $3,000 note in connection therewith. We know of no principle upon which a repayment of borrowed money can be claimed as a deduction. *United States* v. *Little War Creek Coal Co.*, *supra*.

Decision will be entered for the respondent.